CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
06/18/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JANE DOE, *Plaintiff,* v. LIBERTY UNIVERSITY, *ET AL*, *Defendants.* | CASE NO. 6:19-CV-00007 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff filed this action in February 2019. Plainitff's 109-page complaint contains 29 counts against Defendants Liberty University, Nicole M. Dilella, May Deacon, Denise Daniel, Elias Moitinho, and Eric Camden (collectively "Defendants"). (Dkt. 4, "Compl." ¶¶ 271–589). Plaintiff's claims stem from events surrounding her suspension from Defendant Liberty University ("Liberty"). Plaintiff alleges that Defendants' actions violate state law as well as Title IX of the Educations Amendment Act of 1972 ("Title IX"). The Court is now in receipt of multiple motions from both parties. As a preliminary matter, the Court addresses Defendants' motion for a hearing, (dkt. 31), Plaintiff's motion for permission to proceed under pseudonym, (dkt. 1), and Defendants' motion to strike Plaintiff's response in support of her motion to proceed under a pseudonym, (dkt. 30). For the reasons that follow, all three motions will be denied.

**I.   Background**

On February 21, 2019, Plaintiff filed a complaint and a motion for permission to proceed under pseudonym. (Dkts. 4, 1). On March 28, 2019, Defendants filed a response in opposition to Plaintiff's motion to proceed under pseudonym. (Dkt. 11). On May 3, 2019, Plaintiff replied to Defendants' response in opposition, (dkt. 27), and on May 5, 2019, Defendants moved to

1

strike Plaintiff's reply as untimely. (Dkt. 30). The parties filed multiple additional motions, but at this juncture, the Court will focus on the ones named above and provide a brief overview of the facts relevant to Plaintiff's motion to proceed under a pseudonym.

Plaintiff requests to proceed anonymously "in order to maintain and protect her privacy and reputational interests as she seeks redress against" Defendants "for the grievous mishandling of false accusations of professional misconduct brought against" her while she was a student in Liberty's Counselor Education & Supervision program. (Dkt. 3). The conduct underlying this dispute began in November 2017, when a Liberty faculty member emailed Plaintiff "with concerns about Plaintiff's responses" in a conversation on Facebook. (Compl. ¶ 13). "Unbeknownst" to Plaintiff, "two other professors also purportedly filed incident reports complaining of [Plaintiff's] alleged misconduct in prior classes." (*Id*. ¶ 15). The incident reports are based on faculty members' concerns about Plaintiff's interpersonal skills and professional competence. (*Id*. ¶ 39–40). In June 2018, Defendant Dilella filed a second incident report, but "withheld videotaped/recorded evidence that would exonerate" Plaintiff. (*Id*. ¶ 20). After a "closed-door" discussion by Liberty's Remediation Committee, (*id*. ¶ 28), Liberty "immediately placed [Plaintiff] on emergency suspension," halted Plaintiff's practicum, administratively dropped Plaintiff's scheduled Fall course, and barred Plaintiff from registering for any academic course in the Spring 2019 semester.

Plaintiff's claims are based on the nature and consequences of these disciplinary proceedings. First, she states that she did not learn about the concerns documented in the incident reports until after Liberty's Remediation Committee had "rendered judgment against" her. (*Id*. ¶ 17). Because she was not aware of the existence or content of the complaints, she "never had the opportunity to confront her accusers, read their full statements," or review

evidence relating to her alleged infractions. (*Id*. ¶ 33). Second, Plaintiff claims that the information contained in the June 2018 incident report contained "egregious misrepresentations and selective facts to effect [sic] [Plaintiff's] suspension." (*Id*. ¶ 42). Plaintiff argues that this behavior, along with email correspondence, the prejudicial make-up of the remediation committee members, and the allegedly excessively severe punishment she received, supports her claim that Defendants had an "agenda to oust" her. (*Id*. ¶¶ 16, 42–44, 48). Plaintiff further alleges that the flawed implementation of Liberty's disciplinary process "favored [Plaintiff's] *male* classmate [Defendant] Camden's unsupported version of events." (*Id*. 56) (emphasis in original). Finally, Plaintiff claims that Defendants made oral or written statements regarding her situation, as evidenced by a public Facebook post by a student who "was not involved in [Plaintiff's] matter at all and would only know about it from" Defendants. (*Id*. ¶ 59).

## II. Analysis

### A. Defendants' Motion for a Hearing

At the outset, the Court will address Defendants' motion for a hearing on the pending motions. (Dkt. 31). Pursuant to W.D. Va. R. 11(b) and Fed. R. Civ. P. 78(b), the Court has discretion to determine a motion without an oral hearing even when a party has requested oral argument. *See also CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 744 (4th Cir. 2015) ("[I]t is within the sound discretion of the district court to dispose of a motion without a hearing.") (citing Fed. R. Civ. P. 78(b)). In this case, Defendants have requested a hearing on the pending motions to "aid the Court's decisional process." (Dkt. 31 at 2). Plaintiff has objected to this motion. (Dkts. 28, 34). After reviewing the briefing in these matters, the Court finds that oral argument will not aid the decisional process. Defendants' motion will be denied, and the Court will decide these matters on the papers.

3

### B. Defendants' Motion to Strike.

Defendants have moved to strike Plaintiffs' reply in support of her motion to proceed under a pseudonym, arguing the reply is untimely. Local Rule 11(c) provides that "the moving party may file a rebuttal brief within 7 days after the service of the opposing party's reply brief." Plaintiff concedes that the reply was untimely, but notes a faulty attempt to file within the deadline and her decision to re-file based on a letter from the Clerk of the Court. (Dkt. 33 at 2). "[T]he application of the local rules is within the discretion of the Court," *Michael v. Sentara Health System*, 939 F.Supp. 1220, 1225, n.3 (E.D. Va. 1996), and Plaintiff, who is proceeding *pro se*, is "entitled to some deference from courts." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989). Based on the circumstances surrounding Plaintiff's untimely filing, the Court will deny the motion to strike.

### C. Plaintiff's Motion to Proceed Under Pseudonym

Having dispensed with the preliminary matters relating to Plaintiff's motion to proceed under pseudonym, the Court turns to the substance of that motion. Fed. R. Civ. P. 10(a) provides that "[t]he title of the complaint must name all parties." "The purpose of this rule is to appraise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings." *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-320, 2018 WL 5929645 at *2 (W.D. Va., Nov. 13, 2018). "[I]n some limited circumstances, anonymity may be appropriate," *Doe v. Pittsylvania Cty.*, 844 F.Supp.2d 724, 728 (W.D. Va. 2012), but proceeding anonymously is a "rare dispensation." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). "Party anonymity is a discretionary determination made by the trial court." *Id*. (citing *James*, 6 F.3d at 238 (4th Cir. 1993). The Fourth Circuit has provided the following five factors to guide this decision:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interest are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 242. "These factors are not exhaustive; other factors may be relevant depending on the specific circumstances of a case." *Pittsylvania Cty.*, 844 F.Supp.2d at 728 (citing *James*, 6 F.3d at 238).

In this case, Plaintiff, an adult, seeks to protect her own privacy interest in a suit against private parties. Therefore, *James* factors three and four do not favor anonymity and the Court will analyze the remaining three factors. *Id.* (collecting cases noting that anonymity is "warranted to protect minor plaintiffs" but "not warranted in sexual discrimination and harassment suit against private parties"). For the reasons that follow, the Court finds that neither the *James* factors nor any other special circumstance surrounding this case warrants anonymity.

### i. Sensitive and Personal Interest

The first *James* factor asks whether the request for privacy is to avoid annoyance and criticism or to preserve anonymity in a matter of a sensitive or highly personal nature. Here, Plaintiff seeks anonymity to preserve "her privacy and reputational interests as she seeks redress against" Defendants. (Dkt. 3 at 1). Courts have found this factor to be in "clear" favor of anonymity where the issues have been related to sexual misconduct. *See e.g., Va. Polytechnic Inst. & State Univ.*, 2018 WL 5929645, at *3; *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F.Supp.3d 583, 593 (E.D. Va. 2016). A motion to proceed under pseudonym may also be granted where the issue "at the heart of the case" is "a quintessentially private matter." *Pittsylvania Cty.*, 844 F.Supp.2d at 729. Other "[t]ypes of cases in which plaintiffs have been

permitted to proceed anonymously in other courts include birth control cases, abortion cases, welfare cases involving minors born to unmarried parents, and cases involving issues of homosexuality." *Richard S. v. Sebelius*, No. 3:22-0007-TMC, 2012 WL 1909344, at *2 (D.S.C. May 25, 2012) (collecting cases).

Here, Plaintiff states concerns about the public availability of her email address, her home address, and her telephone number. (*Id*. at 9–12). Plaintiff heavily emphasizes the public availability of her Liberty email address, which she uses in a personal and professional capacity. (*Id*. 9–10). Plaintiff expects to continue to use her Liberty email for personal purposes, and states that "[i]n a culture and climate were [sic] many today have no 'filter' or restraint in technology use, [Plaintiff's] personal email may be inundated with litigation-related inquiries that would interfere with [Plaintiff's] ability to do her job, and thus place [Plaintiff] at risk of losing her job." (*Id*. at 11). Plaintiff notes that she is particularly concerned "about anything that could jeopardize [her] employment with Liberty" because her family is covered by medical insurance through that employment. (*Id*.). Additionally, Plaintiff argues that Liberty's disciplinary actions implicate her mental health, and that naming Plaintiff in this suit would "result in her being associated with serious mental disturbances as alleged by Liberty but not supported by the evidence." (*Id*. at 12).

These arguments fail to present an issue of a highly sensitive or personal nature. Rather, what Plaintiff describes seems to be a desire to avoid the annoyance and potential criticism that accompanies all litigation. Plaintiff's argument regarding false association with mental health issues sits in significant tension with her underlying claim of defamation, which presumes that this information is already in the public domain to some extent by virtue of Defendants' alleged publication of this information to third parties. *See, e.g., Dragulescu v. Va. Union Univ.*, 223

F.Supp.3d 499, 507 (E.D. Va. 2016) ("The elements of defamation are (1) publication of (2) an actionable statement with (3) the requisite intent.") (internal quotations omitted). Regardless of tension with underlying claims, Plaintiff's argument appears to be tied to her overarching concern about harm to her professional reputation. But Plaintiff's professional reputation is not of such a sensitive or personal nature that it "override[s] the paramount importance of open courts." *Pittsylvania Cty.*, 844 F.Supp.2d at 744. Accordingly, the first *James* factor does not weigh in favor of anonymity.

  ii. **Retaliatory Physical or Mental Harm**

"The second *James* factor analyzes whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or innocent non-parties." *Va. Polytechnic Inst. & State Univ.*, 2018 WL 5929645, at *3. Here, Plaintiff argues that the "very injury litigated against would occur as a result of the disclosure of plaintiff's identity" and that there are "legitimate concerns about harassment at work that would jeopardize her employment and medical insurance." (Dkt. 3 at 13) (internal quotations omitted). The "injury litigated against" is "the damage to [Plaintiff's] reputation." (*Id*. at 13–14). This is not the type of retaliatory harm an anonymous lawsuit is meant to prevent. *See Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (explaining that anonymity "has not been permitted when only the plaintiff's economic or professional concerns are involved" and collecting cases); *see also Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) (citing *Nat'l Commodity & Barter Ass'n* 886 F.2d at 1245).

As to Plaintiff's concern regarding harassment at work, she notes the damage that could be done to Liberty's accreditation status as reason to fear retaliation. By Plaintiff's own admission, this damage would occur as a result of formal complaints she has filed with agencies,

7

not as a result of the case at hand. Even were the retaliation connected to this litigation, Plaintiff fails to point to any evidence supporting that risk. Unlike cases such as *The Rector & Visitors of George Mason Univ.*, there is no evidence before the Court that this case has garnered media attention, "vitriolic" responses, or threats of any kind. 179 F.Supp.3d at 593. Additionally, Plaintiff has named Liberty and parties associated with Liberty as defendants in this suit. She has also acknowledged that they are aware of her identity. (Compl. ¶ 59). Thus, anonymity in this lawsuit would do little to prevent those in the workplace from learning that she is responsible for this action. For these reasons, the second *James* factor also does not weigh in favor of anonymity.

### iii. The Risk of Unfairness to the Opposing Party

Defendants argue that Plaintiff's complaint attacks their "performance and professional integrity," and because "other students need to have confidence in their professors and their institution," the public should "be able to consider the source of the person who is now impugning" Defendants' reputations. (Dkt. 11 at 4–5). Plaintiff counters that it is Defendants' allegations that impugn her reputation, which is why she has filed this lawsuit. (Dkt. 26 at 7). Although there is some inherent prejudice to Defendants, the Court finds Liberty's arguments concerning prejudice speculative. But ultimately, the Court declines to further parse this factor because, even assuming it weighs in favor of Plaintiff's ability to proceed anonymously, it would not outweigh the other four factors, which do not support Plaintiff's motion to proceed under pseudonym.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to proceed under pseudonym, (dkt. 1), Defendants' motion for a hearing, (dkt. 31), and Defendant's motion to strike, (dkt. 30), will be

denied. In accordance with the accompanying order, Plaintiff will be given fourteen days to decide whether to continue with the case. The Clerk of the Court is hereby directed to send a copy of this memorandum opinion to Plaintiff and all counsel of record.

Entered this 18th day of June, 2019

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE